Bess A. Cousley, Administratrix, Appellant, v. Chicago & Alton Railroad Company, Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Bluford Wilson and William Cotter, Receivers of Chicago, Peoria & St. Louis Railroad Company, and Illinois Terminal Railroad Company, Appellees.

1. COMMERCE, § 4*—*when engagement in interstate by railroads is question of fact.* Where railroad companies do both an interstate and an intrastate business, it is a question of fact as to whether at a particular time said railroad companies are engaged in interstate or intrastate commerce.

2. MASTER AND SERVANT, § 98*—*when Federal Employers' Liability Act applies.* The Federal Liability Act only applies as between employer and employee.

3. WORKMEN'S COMPENSATION ACT, § 2*—*when carrier by land not required to file notice of election to be governed by act.* A carrier by land is not required to affirmatively file a notice of election to be governed by the provisions of the Workmen's Compensation Act and to pay compensation thereunder in order to be entitled to be subrogated under the provisions of section 29 of that Act [Callaghan's 1916 St. Supp. ¶ 5475(29)], as such carriers are conclusively presumed to have so elected under the provisions of

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

(

566    APPELLATE COURTS OF ILLINOIS.

Cousley v. Chicago & Alton R. Co. et al., 207 Ill. App. 565.

section 2 of that Act, Laws of 1913 [Callaghan's 1916 St. Supp. ¶ 5475(2)], providing that such shall be so presumed unless notice of election to the contrary is filed with the Industrial Board and given the employee.

Appeal from the City Court of Alton; the Hon. MAURICE R. SULLIVAN, Judge, presiding. Heard in this court at the March term, 1917. Affirmed. Opinion filed October 24, 1917.

SAMUEL A. HARPER and WILLIAM P. BOYNTON, for appellant.

J. J. BRENHOLT, H.. S. BAKER, KEEFE, HADLEY & BAXTER and C. E. POPE, for appellees.

MR. JUSTICE BOGGS delivered the opinion of the court.

This is an action on the case brought in the City Court of Alton by appellant as administratrix of the estate of Ben C. Cousley, deceased, to recover damages for the death of said deceased, alleged to have been occasioned by the negligence of appellees. The declaration as finally amended alleged, among other things, that appellees operated certain railroad switching tracks in said City of Alton adjacent to the mill of the Standard-Tilton Milling Company, where appellant's intestate was employed; that said tracks were negligently and carelessly built dangerously near said mill building; that it was impossible for appellant's intestate to perform his duties without occasionally going across and upon said tracks; that appellees knew of this practice and acquiesced therein, and that it became the duty of appellees to warn appellant's intestate of the operation of its cars on said track; and that while said intestate was rightly upon said track, and while in the exercise of due care for his own safety, appellees carelessly and improperly drove their switch engine, causing said car to strike said intestate, forcing him against a certain bumper post, crushing him and thereby causing his death.

The declaration further alleged that appellees had not elected to be bound by the provisions of the Workmen's Compensation Act and had not filed notice of an election to provide and pay compensation thereunder to their employees, and that appellees were at the time of the accident engaged in interstate commerce. To this declaration a plea of the general issue was filed.

At the close of the evidence for appellant, on motion of appellees, the court directed a verdict in favor of appellees and against appellant in bar of action and for costs. To reverse said judgment this appeal is prosecuted.

The record discloses that appellees have a joint switching arrangement for the switching of cars along the levee at Alton where appellant's intestate was working when injured. The record further discloses that a switch called the "wheat track" extended along the south or levee side of said mill property and that south of this track were a number of other switches which were used for placing cars to be loaded; that at or near a doorway in the elevator owned by said Milling Company was a double pulley fastened to the floor through which a wire cable was run. This cable was used by said Milling Company in placing cars for loading and unloading on said tracks. On the morning in question, appellant's intestate was working with certain men on the levee tracks placing cars. At that time there were three cars on the "wheat track" and in going to the elevator to adjust the cable, which had in some way become entangled, appellant's intestate passed between the north car and the bumper post which stood at the end of the track and near said elevator door. After adjusting the cable, appellant's intestate in returning was caught between said car and the bumper post. The switching crew of appellees had been directed by the foreman of the Milling Company to remove said three empty cars from said wheat

track. In making the coupling to do so, they bumped or shoved said cars northward and caught appellant's intestate between the rear car and the bumper post, crushing him so severely that he died the next day.

The record further discloses that appellant's intestate and said Milling Company were operating under the Workmen's Compensation Act at the time of said injury and that said Milling Company had paid compensation under said act to appellant as such administratrix in accordance therewith.

It is contended by appellant that appellees were engaged in interstate commerce and that appellant's right of action is in no way affected by the provisions of the Workmen's Compensation Act, and that the right of action against appellees, if any, has not been subrogated to the Standard-Tilton Milling Company. the employer of said deceased. In support of this contention appellant says that some of the cars which were being switched at the time of the injury to appellant's intestate were cars in which wheat had been shipped from points in Missouri and Nebraska.

Where, as in this case, railroad companies do both an interstate and intrastate business, it is a question of fact as to whether at a particular time said railroad companies are engaged in interstate or intrastate commerce. *Illinois Cent. R. Co. v. Behrens*, 233 U. S. 473 [10 N. C. C. A. 153]; *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556; *Chicago, B. & Q. Ry. Co. v. Harrington*, 241 U. S. 177 [11 N. C. C. A. 992], and *Chicago, R. I. & P. Ry. Co. v. Industrial Board of Illinois*, 273 Ill. 528.

In *Chicago, B. & Q. Ry. Co. v. Harrington, supra,* the court in discussing this question at page 179 says: "As the question is with respect to the employment of the decedent at the time of the injury *(Illinois Cent. R. Co. v. Behrens*, 233 U. S. 473, 478, 10 N. C. C. A. 153), it is not important whether he had previously been engaged in interstate commerce, or that it was contem-

plated that he would soon be so engaged after his immediate duty had been performed.''

In this case the cars that were being moved were empty cars and they were being moved to other switch tracks at the instance of the Milling Company, and for its convenience. There is nothing in the record to disclose what was to be done with these cars later on. In other words, at the time of the injury, which is made the important time under the above authorities, there is nothing in the record to show that appellees were then engaged in interstate commerce. Appellant is apparently of the opinion that the Federal Employers' Liability Act in some way affects this case and her rights as such administratrix. We do not so understand said act. The Federal Employers' Liability Act only applied as between employer and the employee, and it is not contended in this case that appellant's intestate was an employee of appellees. The record discloses that he was solely in the employ of said Milling Company and was in the performance of his duties as such at the time he received his injuries.

In *Shanks v. Delaware, L. & W. R. Co., supra,* the court at page 557 says: ''In so far as its words are material here the Employers' Liability Act declares that 'Every common carrier by railroad while engaging in commerce between any of the several States, * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce' if the injury results in whole or in part from the negligence of the carrier or any of its officers, agents or employees. Thus it is essential to a right of recovery under the act not only that the carrier be engaged in interstate commerce at the time of the injury, but also that the person suffering the injury be then employed by the carrier in such commerce. And so it results where the carrier is also engaged in intrastate commerce, or in what is not commerce at all, that one who, while employed therein by the carrier, suffers in-

570      Appellate Courts of Illinois.

Cousley v. Chicago & Alton R. Co. et al., 207 Ill. App. 565.

jury through its negligence, or that of some of its officers, agents or employees, must look for redress to the laws of the State wherein the injury occurs, save where it results from the violation of some federal statute, such as the Safety Appliance Acts.''

The next question which arises under the assignment of errors is as to whether appellant is entitled to maintain an action against appellees as intrastate carriers. Appellant concedes that if appellees were not engaged in interstate commerce and had filed a notice with the Industrial Board to the effect that they had elected to pay compensation under the Workmen's Compensation Act and to be governed by it, that they would not then be liable to appellant for the reason that under the provision of section 29 of said Act [Callaghan's 1916 St. Supp. ¶ 5475(29)], the Milling Company, having paid compensation to appellant under said act would be subrogated to the rights of appellant to the extent of the amount paid by said Milling Company on the death of said intestate. It is insisted, however, that before appellees would be entitled to be so subrogated they must affirmatively file a notice of election to be governed by the provisions of said act and to pay compensation thereunder.

We do not so construe said act. Section 2 of the Compensation Act, Laws of 1913 [Callaghan's 1916 St. Supp. ¶ 5475(2)], provides as follows: ''Every employer enumerated in section 3, paragraph (b), shall be conclusively presumed to have filed notice of his election as provided in section 1, paragraph (a), and to have elected to provide and pay compensation according to the provisions of this act, unless and until notice in writing of his election to the contrary is filed with the Industrial Board and unless and until the employer shall either furnish to his employee personally or post at a conspicuous place in the plant, shop, office, room or place where such employee is to be employed, a copy of said notice of election not to provide and pay com-

pensation according to the provisions of this act; which notice of non-election, if filed and posted as herein provided, shall be effective until withdrawn; and such notice of non-election may be withdrawn as provided in this act.''

Paragraph ''b'' of section 3 [Callaghan's 1916 St. Supp. ¶ 5475(3)] above referred to includes ''Carriers by land.'' It therefore follows that appellees, being carriers by land so far as engaged in intrastate commerce, are conclusively presumed to have elected to be governed by the provisions of the Workmen's Compensation Act, it being conceded that they have not filed notice of an election not to be governed by the provisions of said act.

In *Dietz v. Big Muddy Coal & Iron Co.*, 263 Ill. 480 [5 N. C. C. A. 419], the Supreme Court in discussing the provisions of this statute at page 486 says: ''It was manifestly the intention of the Legislature to make the act applicable to all employers within the enumerated employments, unless and until notice in writing of their election to the contrary is filed with the State Bureau of Labor Statistics. All of the employees to whom the act applied were likewise automatically made subject to the law. Both the employer and the employee in the specified employments became subject to the act without any affirmative action upon their part. The elective feature of the act is to be exercised to avoid being governed thereby, and not to cause the act to be applied in any given case. Section 1 provides that if the employer shall elect not to provide and pay the compensation provided by the act he shall lose his common-law defenses. It will be noted that it is a negative election, and not an affirmative election, that is to be exercised both by the employer and the employee. When the entire scope of the legislation is considered, it is manifest that the Legislature intended that the act should be effective as to all employers in

the specified employments, and their employees, unless the notice prescribed was given.''

It therefore follows that appellant is not entitled to maintain this action, as under the provisions of section 29 of the Workmen's Compensation Act [Callaghan's 1916 St. Supp. ¶ 5475(29)] the Milling Company, if any one, would be entitled to maintain an action against appellees.

Finding no reversible error in the record the judgment of the trial court will be affirmed.

*Judgment affirmed.*